'19CV1481 L    JLB

# EXHIBIT A

1  Joseph D. Mitchell, Esq. (SBN 316978)
2  832 Avenue B
   Redondo Beach, CA 90277
3  Phone: (424) 236-3280

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**07/03/2019** at 03:45:28 PM
Clerk of the Superior Court
By Regina Chanez, Deputy Clerk

4

5           SUPERIOR COURT FOR THE STATE OF CALIFORNIA

6                  FOR THE COUNTY OF SAN DIEGO

7

8                                            37-2019-00034611-CU-OE-CTL

   **DAVID SHEWBERT**, an individual      DFEH No.: 201810-03885715
9
                           Plaintiff,
                                          **COMPLAINT FOR EMPLOYMENT**
10 v.                                     **DISCRIMINATION AND OTHER**
                                          **CHARGES**
11 **DEXCOM, INC.**, a Delaware corporation;
12 and **DOES 1-20**, inclusive

13                         Defendant.

14

15 Plaintiff DAVID SHEWBERT ("PLAINTIFF") hereby complains and alleges as follows:

16

17 1. Defendant, DEXCOM, INC. ("DEFENDANT"), is headquartered in San Diego, CA

18    and maintains a facility there. In the course of running their business, DEFENDANT

19    hired a number of workers to run and operate their call center located herein. Over the

20    course of PLAINTIFF'S nearly three year employment at DEXCOM, he was denied

21    promotions on three separate occasions, due to his disability and use of authorized

22    medical leave, most recently on or about October 1, 2018, despite repeated attempts

23    and appeals by two of his previous supervisors, a manager, and the director in

24    recommending he be approved for such a position. Despite his recent promotion on or

25    about November 5, 2018, he was not being paid at the usual rate of pay, whereas

26    others who are similarly situated are, due to his authorized use of medical leave.

27 2. DEFENDANT is an employer subject to suit under the California Fair Employment

28    and Housing Act (FEHA) (Cal. Gov. Code, § 12900 et seq.).

## JURISDICTION & VENUE

1. This Court has jurisdiction to hear the subject matter of this complaint. This Court also has jurisdiction over each defendant, as the unlawful business practices alleged herein, occurred in California. Venue is proper in this Court because all or some of the violations of law alleged herein occurred and are occurring in the county of San Diego, and likely elsewhere the defendant conducts business.

## GENERAL ALLEGATIONS

1. At all relevant times Plaintiff, DAVID SHEWBERT, was and is an individual who resides in the State of California, County of San Diego, City of San Diego.

2. PLAINTIFF is informed, believes, and thereon alleges that defendant, DEXCOM, INC., is a Delaware corporation, headquartered and doing business in California at 6340 Sequence Drive, San Diego, CA 92121.

3. The true names and capacities of the Defendants named herein as DOES 1 through 20, inclusive, whether individual, corporate, associate or otherwise, are unknown to PLAINTIFF, who therefore sues said DEFENDANT by such fictitious names. PLAINTIFF will amend this complaint to add their true names and capacities when the same have been ascertained.

4. PLAINTIFF is informed and believes and thereon alleges, that each DOE named herein is an employee, agent, partner, employer, predecessor, successor, assign, attorney, associate, joint venturer, and/or co-conspirator of the named DEFENDANT and at all times herein mentioned was acting within such agency, association, partnership, venture, employment relationship, and/or conspiracy and that any reference to "defendant'" or "Defendant" or "Defendants" shall mean "Defendants and each of them."

5. PLAINTIFF is informed and believes and thereon alleges, that the named DEFENDANT is responsible for the occurrences herein alleged, and that PLAINTIFF'S damages as herein alleged were proximately caused by DEFENDANT.

DFEH No.: 201810-03885715

6. From on or about July 5, 2016 to present day, PLAINTIFF has been employed with DEFENDANT.

7. PLAINTIFF is employed with DEFENDANT as a Technical Support Representative at one of DEFENDANT'S locations at 6340 Sequence Drive, San Diego, CA 92121.

8. As an employee of DEFENDANT, PLAINTIFF regularly works in excess of eight (8) hours per day and in excess of forty (40) hours per week. However, DEFENDANT mandated that overtime be worked or PLAINTIFF would be penalized, by so-called workplace "occurrences." In addition, DEFENDANT failed to allow for scheduling that conflicted with the mandated overtime hours, even when requested as a reasonable accommodation by the PLAINTIFF.

9. DEFENDANT maintains parking that is an unreasonable distance from the workplace, and mandates that every employee who is employed within the closest building park in the vicinity. Even on days where one would expect fewer employees on the grounds, the nearest parking is regularly unavailable, unless one arrives more than twenty minutes or more before one's shift. This forces many able-bodied employees to park in designated "overflow" areas, walking more than five minutes, sometimes through cramped parking stalls, over inaccessible pathways and down embankments, and several hundred yards to the nearest entrance, eating up precious time that would otherwise be spent working. Dauntingly, this causes other "less mobile" disabled individuals even more time, causing most employees to be late when clocking-in, thereby incurring "half-occurrences" with some taking time off, so as to not rack up these penalties.

10. DEFENDANT requires nearly all employees, upon entry into the closest building, to pass through two sets of security doors, multiple stair sets, individualized computer logons, a workplace browser and portal login, followed by a time clock styled system, all before one can even register they are present and accounted for, in order to start the day. Each loading screen, application and machine startup, and physical security measure consumes precious minutes decides whether an employee is issued an

3

1     "occurrence," just as they are beginning each workday. Not one second any employee

2     is paid for, because they are not registered as "on the clock" until they have passed

3     these measures and have "punched in" as mandated by the DEFENDANT.

4   11. DEFENDANT also mandates that employees must vacate the workplace during

5     breaks, but provides no common areas to gather, forcing individuals to leave the

6     premises, or at the very least, retreat to their vehicles for any kind of respite.

7   12. Should any employee be late when checking into work, they are unfairly penalized for

8     tardiness, denoted as "occurrences." An accumulation of more than a few occurrences

9     results in disciplinary action against an employee, and repeated offenses in

10    termination. Since they cannot check back in before their day starts, or their break

11    time is over, this becomes an untenable position.

12   13. DEFENDANT fails to maintain clear promotion and policy standards and

13    communications with its employees. When asked, Supervisors and Human Resource

14    Representatives are dismissive in requests for more information.

15   14. DEFENDANT stresses employee metrics quite frequently in departmental emails and

16    metric reports on an almost daily basis. Most are usually short summaries of the

17    positives and negatives faced by each department or employee, followed by an

18    elementary scaled report card, gauging work ethic and performance by an A, B, C, or

19    "Does Not Meet Expectations" line item. This grade is usually followed by an

20    individualized comment or two, keeping with the grade school scale notation, and is

21    commonly known throughout the workplace as a "Report Card." Although not set in

22    stone, it is stressful for employees to think that these metrics can make or break

23    employee performance, thereby affecting bonuses and severances, at any time, seeing

24    as how DEFENDANT has not indicated otherwise.

25   15. DEFENDANT maintains substandard working conditions and refuses to correct,

26    reduce exposure for employees, or remedy potentially hazardous particulate matter

27    that is present in the air and collects on all surfaces within the call center day after

28    day, even after multiple complaints by employees and investigation by OSHA, under

4

1      29 C.F.R. § 1910 *et seq*. Although signage and notices have been posted around the

2      office, no other action by DEFENDANT has taken place, even simply replacing air-

3      filters, and individual employees should not have to be responsible for their own

4      respiratory well-being.

5  16. On or about January 24, 2019, DEFENDANT treated their offices for a bedbug

6      infestation with a customized solution from Terminix International Company, LP.

7      DEFENDANT informed employees of this action via email, on December 10, 2018,

8      stating, "are already working with facilities and a pest control contractor to address the

9      situation, but we need to get a sense of the scope of the issue first." DEFENDANT

10      also noted, "if you are not sure what a bed-bug looks like, we will settle for any weird

11      bug that you saw recently in your workspace that looked sinister." And in an effort to

12      curtail the infestation in a timely manner, DEFENDANT reassured employees, "We

13      will make sure to address this situation expediantly [sic]." Once again, this treatment

14      took forty-five (45) days to commence.

15  17. In a follow-up email, dated January 24, 2019, DEFENDANT asked for the co-

16      operation of employees, stating, "To make this initiative successful, we need

17      everyone's help to access areas by clearing off the floor around their desks and

18      removing any coats or sweaters off of chairs. Food should also be taken home."

19      DEFENDANT told employees that, "Facilities has arranged for a special effort . . .

20      starting at 5pm and continuing on throughout the evening." Employer finalized the

21      email with, "At the allotted time, please grab your belongings and vacate the building

22      so facilities team can get started," as if it were no big deal. The Technical

23      Representatives on the second floor were told they had to stay until 7PM or they

24      would be penalized, while the workers from Terminix were present on-site with

25      respirators. Additionally, employees were never told how long the treatment would

26      take, what chemicals were being used, or what the company's recommended time of

27      vacancy and/or exposure was, other than assurances of a minimum of four (4) hours.

28      Employees were asked to return within hours, and because DEFENDANT neglected

1   to properly ventilate the area, numerous employees complained of residual effects of
2   the treatment, even days later, suffering from headaches, nausea, labored breathing,
3   dizziness, skin, lip, and tongue inflammation and irritation. Many of these employees
4   filed Injury/Illness/Incident Reports (Dexcom Form EHF-C-F-013) which had to be
5   signed by their supervisors, and then left the building for health and safety concerns,
6   in an attempt to limit their exposure.

7   18. Several employees made claims about symptoms from the treatment, including one
8   who went to urgent care for a severe allergic reaction. Subsequently, a host of claims
9   for disability were filed on many employee's behalf by the DEFENDANT. However,
10  these claims were most likely not acted on by the majority of the employees due to
11  how involved the claim would be for such a minuscule return of three hours of Paid
12  Time Off (PTO).

13  19. Not only did DEFENDANT negligently ventilate the area, they neglected the many
14  emails, requested face-to-faces with supervisors and HR reps, and PLAINTIFF'S own
15  OSHA complaint from more than a year ago, on or about March 2, 2018, whose back
16  and forth spanned several months, beginning on or about December 24, 2017. This
17  complaint stemmed from the occurrence of fibrous particulate matter that was vented
18  through the air-conditioning system, raining onto desks and every other surface in the
19  DEFENDANT'S technical support staff workplace, where each day when
20  PLAINTIFF would come in a new layer had accumulated between shifts.

21  20. Throughout PLAINTIFF'S employment with DEFENDANT, PLAINTIFF would
22  regularly make DEFENDANT and their agents—Human Resource Representatives,
23  multiple Supervisors, and Facilities Management—aware of these issues and the
24  corrective measures that were justified. However, DEFENDANT and their agents
25  failed to address these issues, often ignoring and outright dismissing them; does not
26  give PLAINTIFF and/or his fellow co-workers the requested time off, by not
27  authorizing a day in the middle of their requested period; and has yet to take any steps
28  to remedy any of these complaints filed by PLAINTIFF and his co-workers.

DFEH No.: 201810-03885715

21. PLAINTIFF was recently promoted by DEFENDANT, but not at the usual rate of pay. As recently as June 2018, other co-workers have been promoted and paid at a rate higher than that which PLANTIFF is now being paid. Other co-workers who have requested lawful means of time off have been treated similarly by DEFENDANT, often having adverse employment decisions taken against them as well.

## FIRST CAUSE OF ACTION
## DISPARATE TREATMENT
## DISABILITY DISCRIMINATION
### (Against all DEFENDANTS)

22. PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

23. PLAINTIFF was discriminated against because of his mental disability and as a result of the discrimination was denied a comparable promotion. (Cal. Gov. Code §12940(a) and §12926(j) respectively.) PLAINTIFF has severe insomnia, exacerbated anxiety, and undue stress, fear, and apprehension brought on by his employment, properly notified his employer of this, and has been proscribed medication designed to mitigate his symptoms. However, DEFENDANT'S actions have had the opposite effect and made things significantly worse.

24. PLAINTIFF originally applied for a promotion more than five months prior to his promotion, on or about May 2018, and was denied this position. PLAINTIFF repeatedly applied on multiple occasions, and was continually denied a promotion despite being recommended for one. On or about November 5, 2018, PLAINTIFF was finally approved for a promotion. However, where the standard rate of pay for other employees has been $26 an hour, with shift differentials and yearly cost of living increases equating to $27.30 an hour; whereas PLAINTIFF only receives $23.25. This difference equates to a $4.05 per hour discrepancy when compared to similarly qualified co-workers who have been promoted to the same position.

DFEH No.: 201810-03885715

25. PLAINTIFF'S disability was a substantial motivating reason for DEFENDANT's decision not to promote him, only eventually doing so. See *Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232 [152 Cal.Rptr.3d 392, 294 P.3d 49]. DEFENDANT refuses to give PLAINTIFF a straight answer as to why his promotion has been denied multiple times, and has declined any kind of meeting to discuss reasons why, including a request for mediation between the parties.

26. PLAINTIFF was harmed, by not being promoted due to a loss of earnings, those past, continuing, and future, as well as back pay for those previous five months, including DEFENDANT'S imposed mandatory overtime at his promoted position's rate of pay.

27. "Damages may be awarded for lost earning capacity without any proof of actual loss of earnings." (*Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 348, fn. 6 [100 Cal.Rptr.2d 854], internal citations omitted.) "The test [for lost earning capacity] is not what the plaintiff would have earned in the future but what []he could have earned. . . . Such damages are '. . . awarded for the purpose of compensating the plaintiff for injury suffered, i.e., restoring . . . [him] as nearly as possible to . . . [his] former position, or giving . . . [him] some pecuniary equivalent.' Impairment of the capacity or power to work is an injury separate from the actual loss of earnings." (*Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 412 [196 Cal.Rptr. 117], original italics, internal citations omitted.)

28. DEFENDANT'S conduct was a substantial factor in causing PLAINTIFF'S harm. If PLAINTIFF had been promoted when he first applied, and paid what he is rightfully due, this action would not be necessary.

29. "Requiring the plaintiff to show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision. At the same time, . . . proof that discrimination was a *substantial* factor in an employment decision triggers the deterrent purpose of the FEHA and thus exposes the employer to liability, even if

8

1  other factors would have led the employer to make the same decision at the time."

2  (*Harris*, *supra*, 56 Cal.4th at p. 232, original italics.)  "We do not suggest that

3  discrimination must be alone sufficient to bring about an employment decision in

4  order to constitute a substantial motivating factor. But it is important to recognize that

5  discrimination can be serious, consequential, and even by itself determinative of an

6  employment decision without also being a "but for" cause." (*Harris*, *supra*, 56 Cal.4th

7  at p. 229.)

8  30. As a result of DEFENDANT'S discriminatory conduct, PLAINTIFF has suffered and

9  continues to suffer, significant economic loss and damages.

10

11  **SECOND CAUSE OF ACTION**

12  **DISPARATE IMPACT**

13  **DISABILITY DISCRIMINATION**

14  **(Against ALL DEFENDANTS)**

15  31. PLAINTIFF restates and incorporates by this reference each and every preceding

16  paragraph in this complaint as though fully set forth at this point.

17  32. DEFENDANT has an employment practice of not promoting disabled employees,

18  especially those who utilize lawfully acquired medical leave, which has a

19  disproportionate adverse effect on PLAINTIFF, and other similarly situated

20  employees.

21  33. On numerous occasions, those employees that have acquired leave under the Family

22  Medical Leave Act ("FMLA") have been passed over and outright denied promotions

23  to new positions. One such occasion, on or about December 2018, PLAINTIFF was

24  told by a fellow employee who was in the same training group, a Ms. Suzanna

25  Gonzalez, about her recent meeting with Gladys Williams, then manager and upper

26  leadership, regarding her possible promotion. After she had just left the meeting, a

27  group of about ten of her peers was held, wherein the employee was directly denied

28

DFEH No.: 201810-03885715

1   her promotion in front of them all. DEFENDANT specifically noted that she "was a
2   different case" because "[she] was on FMLA."

3   34.PLAINTIFF was harmed by being denied a promotion for the prior five months, as
4     well as being underpaid at a discounted rate, and continues to be subjected to these
5     kinds of discriminatory employment practices by DEFENDANT.

6   35.As a result of DEFENDANT'S discriminatory employment practice, PLAINTIFF
7     along with other disabled employees who have been recognized under FMLA, have
8     suffered and continue to suffer, significant economic loss and damages.

9

10                          **THIRD CAUSE OF ACTION**
11                              **RETALIATION**
12                          **(Against ALL DEFENDANTS)**

13  36. PLAINTIFF restates and incorporates by this reference each and every preceding
14    paragraph in this complaint as though fully set forth at this point.

15  37. DEFENDANT retaliated against PLAINTIFF after he filed his request for leave
16    under the Family Medical Leave Act, or "FMLA" (29 U.S.C. § 2601 *et seq.*), by
17    repeatedly denying his eventual promotion. This provision nearly mirrors California's
18    own California Family Rights Act, or "CFRA" (Cal. Gov. Code §12945.2 *et seq.*) to
19    wit, DEFENDANT would also be in violation of. Since DEFENDANT'S statements
20    echoed the FMLA, the following are in respect thereof, while still reflecting similar
21    provisions contained under CFRA provisions accordingly.

22  38. On or about, July 5, 2017, PLAINTIFF became eligible, timely filed for, and
23    requested time off, which was approved under FMLA. He has since utilized and
24    reported time through a third-party website and notified DEFENDANT through their
25    attendance phone line, each and every instance that he needed time off.

26  39. DEFENDANT refused to promote PLAINTIFF because of his request under FMLA,
27    only eventually doing so, after multiple attempts.

28  ///

                                    10

1   40. PLANTIFF'S request under FMLA was a substantial motivating reason for

2   DEFENDANT'S decision not to promote him. See *Harris*, as well as *Alamo v.*

3   *Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 479 [161

4   Cal.Rptr.3d 758]. By utilizing lawful means of alleviating his mental disability, and

5   finding a way around DEFENDANT'S mandated overtime hours and pernicious

6   scheduling requirements, PLAINTIFF was repeatedly held back from his promotion.

7   41. PLAINTIFF was harmed, because he has not been given the earnings he is rightfully

8   due, since the time he should have been promoted.

9   42. DEFENDANT'S decision not to promote PLAINTIFF was a substantial factor in

10   causing him harm. By refusing to give valid reasons as to why PLAINTIFF was

11   constantly "passed over" and refusing to engage in mediation in order to identify these

12   reasons, PLAINTIFF has essentially been left "in limbo" as to why he is unable to

13   move up or able to apply to other departments with vacant positions. In effect, Human

14   Resources, and the hiring department, have surreptitiously blocked any and all

15   applications from technical support representatives in their attempts to move out of

16   this position. Many employees other than the PLAINTIFF are aware of this practice,

17   yet Human Resources will outright deny any such policy is in place.

18   43. PLAINTIFF'S colleague is one of few who has spoken to a higher up, a VP within

19   the company, who has acknowledged the existence of this practice. Internally, this is

20   obvious to any employee seeking a promotion, or information regarding how-to move

21   up: a request by the employee would be generated, yet that employee would never

22   hear a response even if they were over-qualified for a position; they would, or could

23   apply to several positions over the length of their employment to different

24   departments; and eventually, the employee would receive a denial from another

25   department outside their own, ask again what they could do better to be qualified for

26   the position; then seek to speak to the recruiter who "will ask the manager," finding

27   out that employee is simply a low-man on the totem pole, in this case within tech

28   support, and never respond to them again.

1    44. "It is well established that a plaintiff in a retaliation case need only prove that a

2         retaliatory animus was at least a substantial or motivating factor in the adverse

3         employment decision." (*George v. California Unemployment Ins. Appeals Bd.* (2009)

4         179 Cal.App.4th 1475, 1492 [102 Cal.Rptr.3d 431].)  "Moreover, [defendant]'s

5         actions had a substantial and material impact on the conditions of employment. The

6         refusal to promote [plaintiff] is an adverse employment action under FEHA. There

7         was also a pattern of conduct, the totality of which constitutes an adverse employment

8         action. This includes undeserved negative job reviews, reductions in his staff, ignoring

9         his health concerns and acts which caused him substantial psychological harm."

10        (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413,

11        423–424 [69 Cal.Rptr.3d 1].)

12   45. PLAINTIFF need not prove discrimination in order to be protected from retaliation. If

13        he reasonably believes that DEFENDANT'S conduct was unlawful, he may prevail on

14        a retaliation claim even if he does not present, or prevail on, a separate claim for

15        discrimination.

16   46. " 'The legislative purpose underlying FEHA's prohibition against retaliation is to

17        prevent employers from deterring employees from asserting good faith discrimination

18        complaints . . . .' Employer retaliation against employees who are believed to be

19        prospective complainants or witnesses for complainants undermines this legislative

20        purpose just as effectively as retaliation after the filing of a complaint. To limit FEHA

21        in such a way would be to condone 'an absurd result' that is contrary to legislative

22        intent. We agree with the trial court that FEHA protects employees against preemptive

23        retaliation by the employer." (*Steele v. Youthful Offender Parole Bd.* (2008) 162

24        Cal.App.4th 1241, 1253 [76 Cal.Rptr.3d 632] at p. 1255, internal citations omitted.)

25   47. As a result of DEFENDANT'S retaliatory conduct, PLAINTIFF has suffered and

26        continues to suffer, significant economic loss and damages.

27   / / /

28   / / /

12

# FOURTH CAUSE OF ACTION

## VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

### (Against ALL DEFENDANTS)

48. PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

49. DEFENDANT refused to promote PLAINTIFF after he lawfully started using his granted leave under the Family Medical Leave Act, "FMLA." DEENDANT unlawfully interfered with PLAINTIFF'S exercise of his rights under 29 U.S.C. §2615(a) by failing to promote him, after being granted leave for his mental disability.

50. PLAINTIFF was eligible for medical leave on or about July 5, 2017, and began taking periodic leave for PLAINTIFF'S own serious health condition that made him unable to perform certain functions of his job with DEFENDANT. Namely, his chronic and severe anxiety was exacerbated by having to work mandated overtime, and being placed in consistently worsening working conditions. Graveyard shifts also contributed to his development of and worsening insomnia, furthering his decreased ability to sleep and cognitively function at work. PLAINTIFF was consistently denied the ability to shift out of graveyard after a year and a half despite his lawfully acquired medical leave.

51. PLAINTIFF provided reasonable notice to DEFENDANT of his need for medical leave, including its expected timing and length. Before PLAINTIFF was granted leave under FMLA, he advised his supervisors and human resources that he would be taking time off, in an attempt to mitigate his severe anxiety and chronic insomnia.

52. DEFENDANT failed to promote PLAINTIFF because he took leave under FMLA. DEFENDANT refuses promotions and other workplace requests, like time off, to other employees as well, especially if they utilize lawful means of acquiring leave.

53. PLANTIFF was harmed by not being promoted in a reasonable and timely manner, the earnings that come with that promotion, as well as the unnecessary stresses of being written up for so-called workplace "occurrences" by his employer.

DFEH No.: 201810-03885715

1  DEFENDANT may attempt to justify the delay of his promotion under this reasoning,
2  but cannot deny PLAINTIFF'S eventual rise. Furthermore, DEFENDANT cannot
3  reasonably justify his promotion at a discounted rate when others around him received
4  a greater pay rate.

5  54. DEFENDANT'S conduct was a substantial factor in causing PLAINTIFF'S harm. If
6  DEFENDANT had not denied PLAINTIFF'S promotion, because he took leave under
7  FMLA, there would be no further cause for this action.

8  55. As a result of DEFENDANT'S unlawful conduct, PLAINTIFF has suffered and
9  continues to suffer, significant economic loss and damages.

10

11                      **FIFTH CAUSE OF ACTION**
12            **HOSTILE WORK ENVIRONMENT HARASSMENT**
13                  **CONDUCT TOWARD OTHERS**
14                    **(Against All DEFENDANTS)**

15  56. PLAINTIFF restates and incorporates by this reference each and every preceding
16  paragraph in this complaint as though fully set forth at this point.

17  57. PLAINTIFF was subjected to a hostile or abusive work environment because his
18  coworkers at DEXCOM, INC. were subjected to harassment based on disability,
19  gender, and race.

20  58. Although not personally subjected to unwanted harassing conduct, PLAINTIFF
21  personally witnessed harassing conduct that took place in his immediate work
22  environment. Including other co-workers being demeaned out in front of many within
23  earshot. A disabled woman being neglected about her condition, "stalked," as well as
24  sexually harassed for a number of months. Another was talked about loudly enough
25  for many to hear after a meeting about her own promotion, stating that she "was a
26  different case" because she "was on FMLA." This same employee was also penalized
27  for not using less time on leave and was denied a similar promotion as PLAINTIFF.
28  / / /

DFEH No.: 201810-03885715

59. The harassing conduct was severe or pervasive. "We have agreed with the United States Supreme Court that, to prevail, an employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex. The working environment must be evaluated in light of the totality of the circumstances: '[W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " (*Miller v. Dept. of Corrections* (2005) 36 Cal.4th 446, 462 [30 Cal.Rptr.3d 797, 115 P.3d 77], internal citations omitted.)

60. A reasonable member of protected group in PLAINTIFF'S circumstances would have considered the work environment to be hostile or abusive. Additionally, PLAINTIFF considered the work environment to be hostile or abusive toward various members of these groups, including himself.

61. PLAINTIFF'S supervisor(s) engaged in the conduct, and allowed the harassment to continue. As mentioned above, Gladys Williams made discriminatory remarks along the lines of not promoting employees "because [they were] on FMLA." Additionally, on or about March 20, 2019, In-House Counsel, Martin P. Gomez, and related staff, failed to check their records and recognize PLAINTIFF'S protected status under FMLA. Again, PLAINTIFF timely filed on or about July 5, 2017, and has utilized the absence hotline each time he takes time off from work.

62. Due to multiple complaints by other co-workers, DEFENDANT and its supervisors or agents knew or should have known of the conduct and failed to take immediate and appropriate corrective action.

63. PLAINTIFF was harmed. "The United States Supreme Court . . . has clarified that conduct need not seriously affect an employee's psychological well-being to be

1    actionable as abusive work environment harassment. So long as the environment
2    reasonably would be perceived, and is perceived, as hostile or abusive, there is no
3    need for it also to be psychologically injurious." (*Kelly-Zurian v. Wohl Shoe Co., Inc.*
4    (1994) 22 Cal.App.4th 397, 412 [27 Cal.Rptr.2d 457], internal citations omitted.)
5    Even though DEFENDANT'S conduct need not affect the psychological well-being
6    of the PLAINTIFF, he continues to suffer exacerbated symptoms with regards to his
7    mental disability.
8    64. DEFENDANT'S conduct was a substantial factor in causing PLAINTIFF's harm.
9    65. As a result of DEFENDANT'S unlawful treatment of its employees, PLAINTIFF has
10   suffered and continues to suffer, significant damages.
11
12                          **SIXTH CAUSE OF ACTION**
13                     **FAILURE TO PREVENT HARASSMENT**
14                          **(Against All DEFENDANTS)**
15   66. PLAINTIFF restates and incorporates by this reference each and every preceding
16   paragraph in this complaint as though fully set forth at this point.
17   67. DEFENDANT failed to take all reasonable steps to prevent harassment based on
18   disability, gender, and race. "The employer's duty to prevent harassment and
19   discrimination is affirmative and mandatory." (*Northrop Grumman Corp. v. Workers'*
20   *Comp. Appeals Bd.* (2002) 103 Cal.App.4th 1021, 1035 [127 Cal.Rptr.2d 285].)
21   68. PLAINTIFF was subjected to harassment in the course of employment.
22   69. DEFENDANT failed to take all reasonable steps to prevent the harassment.
23   70. PLAINTIFF was harmed, by being subjected to witnessing severe and pervasive
24   harassment towards his fellow employees in the workplace, thus placing him in
25   apprehension of being subject to it himself on a daily basis.
26   71. DEFENDANT'S failure to take all reasonable steps to prevent harassment was a
27   substantial factor in causing PLAINTIFF'S harm.
28   / / /

72. As a result of DEFENDANT'S failed duty to its employees, PLAINTIFF has suffered and continues to suffer, significant damages.

## SEVENTH CAUSE OF ACTION
## FAILURE TO PREVENT DISCRIMINATION
## (Against All DEFENDANTS)

73. PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

74. DEFENDANT failed to take all reasonable steps to prevent discrimination based on disability, gender, and race.

75. PLAINTIFF was subjected to discrimination in the course of employment.

76. DEFENDANT failed to take all reasonable steps to prevent the discrimination.

77. PLAINTIFF was harmed.

78. DEFENDANT'S failure to take all reasonable steps to prevent discrimination was a substantial factor in causing PLAINTIFF'S harm.

79. As a result of DEFENDANT'S failed duty to its employees, PLAINTIFF has suffered and continues to suffer, significant damages.

## EIGHTH CAUSE OF ACTION
## FAILURE TO PREVENT RETALIATION
## (Against All DEFENDANTS)

80. PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

81. DEFENDANT failed to take all reasonable steps to prevent retaliation based on disability, gender, and race.

82. PLAINTIFF was subjected to retaliation in the course of employment.

83. DEFENDANT failed to take all reasonable steps to prevent the retaliation. "In accordance with . . . the fundamental public policy of eliminating discrimination in the

17

1  workplace under the FEHA, we conclude that retaliation is a form of discrimination

2  actionable under [Gov. Code] section 12940, subdivision (k)." (*Taylor v. City of Los*

3  *Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1240 [51 Cal.Rptr.3d

4  206], disapproved on other grounds in *Jones v. The Lodge at Torrey Pines*

5  *Partnership* (2008) 42 Cal.4th 1158 [72 Cal.Rptr.3d 624, 177 P.3d 232].)

6  84. PLAINTIFF was harmed.

7  85. DEFENDANT'S failure to take all reasonable steps to prevent retaliation was a

8  substantial factor in causing PLAINTIFF'S harm.

9  86. As a result of DEFENDANT'S failed duty to its employees, PLAINTIFF has suffered

10  and continues to suffer, significant damages.

11

12  ## NINTH CAUSE OF ACTION

13  ## DISABILITY DISCRIMINATION

14  ## (Against All DEFENDANTS)

15  87. PLAINTIFF restates and incorporates by this reference each and every preceding

16  paragraph in this complaint as though fully set forth at this point.

17  88. DEFENDANT wrongfully discriminated against PLAINTIFF based on his history of

18  having a mental disability.

19  89. DEFENDANT knew that PLAINTIFF had a history of having mental stresses,

20  including but not limited to chronic insomnia and severe anxiety, that limited his

21  ability to sleep and work. Additionally, these stresses were further exacerbated by the

22  additional hours mandated by DEFENDANT's overtime policies.

23  90. Despite his disability, PLAINTIFF was able to perform the essential job duties for

24  someone with his condition. Each day he completed his assigned tasks and was

25  repeatedly thanked for his hard work on numerous occasions. His supervisors

26  recommended, and fought for his promotion multiple times.

27  91. " ' "Essential functions" means the fundamental job duties of the employment

28  position the individual with a disability holds or desires. "Essential functions" does

18

1    not include the marginal functions of the position.' ' "Marginal functions" of an
2    employment position are those that, if not performed, would not eliminate the need for
3    the job or that could be readily performed by another employee or that could be
4    performed in an alternative way.' 'A job function may be considered essential for any
5    of several reasons, including, but not limited to, any one or more of the following: (A)
6    . . . [T]he reason the position exists is to perform that function. (B) . . . [T]he limited
7    number of employees available among whom the performance of that job function can
8    be distributed. [And] (C) . . . the incumbent in the position is hired for his or her
9    expertise or ability to perform the particular function.' " (*Nealy v. City of Santa*
10   *Monica* (2015) 234 Cal.App.4th 359, 373 [184 Cal.Rptr.3d 9], internal citations
11   omitted.)

12   92. DEFENDANT refused to promote PLAINTIFF because of his mental disability.

13   93. PLAINTIFF'S history of having a mental disability was a substantial motivating
14   reason for DEFENDANT'S decision not to promote PLAINTIFF.

15   94. PLAINTIFF was harmed.

16   95. DEFENDANT'S conduct was a substantial factor in  causing PLAINTIFF'S harm.

17   96. PLAINTIFF does not need to prove that DEFENDANT held any ill will or animosity
18   toward him personally because he is mentally disabled.

19   97. As a result of DEFENDANT'S discriminatory conduct, PLAINTIFF has suffered and
20   continues to suffer, significant economic loss and damages.

21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

DFEH No.: 201810-03885715

1

## TENTH CAUSE OF ACTION

2

### FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

3

### (Against All DEFENDANTS)

4  98. PLAINTIFF restates and incorporates by this reference each and every preceding

5  paragraph in this complaint as though fully set forth at this point.

6  99. DEFENDANT failed to engage in a good-faith interactive process with him, in order

7  to determine whether it would be possible to implement effective reasonable

8  accommodations so that PLAINTIFF could perform his job. (Gov. Code 12940(n).)

9  100.   PLAINTIFF has a mental disability that was known to DEFENDANT. "FEHA's

10  reference to a 'known' disability is read to mean a disability of which the employer

11  has become aware, whether because it is obvious, the employee has brought it to the

12  employer's attention, it is based on the employer's own perception—mistaken or

13  not—of the existence of a disabling condition or, perhaps as here, the employer has

14  come upon information indicating the presence of a disability." (*Gelfo v. Lockheed*

15  *Martin Corp.* (2006) 140 Cal.App.4th 34, 61, fn. 21 [43 Cal.Rptr.3d 874] at p.61])

16  101.   PLAINTIFF requested that DEFENDANT make reasonable accommodations,

17  including shifts that did not exacerbate his insomnia and anxiety any further, and time

18  off so that he could mitigate these symptoms, for his mental disability so that he

19  would be able to perform the essential job requirements.

20  102.   PLAINTIFF was willing to participate in an interactive process to determine

21  whether reasonable accommodation could be made so that he would be able to

22  perform the essential job requirements. PLAINTIFF reached out on multiple

23  occasions to his supervisors and human resource managers, but never received any

24  response.

25  103.   DEFENDANT failed to participate in a timely good-faith interactive process with

26  PLAINTIFF, in order to determine whether reasonable accommodation could be

27  made. More often than not by simply ignoring PLAINTIFF'S requests, and hoping

28  they would cease, or PLAINTIFF would give up. "FEHA requires an informal process

1    with the employee to attempt to identify reasonable accommodations, not necessarily

2    ritualized discussions." (*Nealy, supra* 234 Cal.App.4th 359, 379 [184 Cal.Rptr.3d 9].)

3    104.   PLAINTIFF was harmed, by being further stressed and taken advantage of by his

4    employer, not being given needed time off, and further exacerbating his mental

5    disability.

6    105.   DEFENDANT'S failure to engage in a good-faith interactive process was a

7    substantial factor in causing PLAINTIFF'S harm. If a simple conversation about

8    proper accommodations had taken place, and PLAINTIFF had been granted them, he

9    would have been able to work more effectively, despite the constant stresses of his

10   position.

11   106.   "Once initiated, the employer has a continuous obligation to engage in the

12   interactive process in good faith. 'Both employer and employee have the obligation

13   "to keep communications open" and neither has "a right to obstruct the process." . . .

14   "Each party must participate in good faith, undertake reasonable efforts to

15   communicate its concerns, and make available to the other information which is

16   available, or more accessible, to one party. Liability hinges on the objective

17   circumstances surrounding the parties' breakdown in communication, and

18   responsibility for the breakdown lies with the party who fails to participate in good

19   faith." ' " (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954,

20   971–972 [181 Cal.Rptr.3d 553].)

21   107.   As a result of DEFENDANT'S failed duty to engage in the interactive process,

22   PLAINTIFF has suffered and continues to suffer, significant physical and mental

23   harm, economic loss and damages.

24   / / /

25   / / /

26   / . / /

27   / / /

28   / / /

DFEH No.: 201810-03885715

## ELEVENTH CAUSE OF ACTION
### FAILURE TO REASONABLY ACCOMMODATE
### (Against All DEFENDANTS)

108.   PLAINTIFF restates and incorporates by this reference each and every preceding
paragraph in this complaint as though fully set forth at this point.

109.   DEFENDANT failed to reasonably accommodate his mental disability. By not
allowing him to take shifts that aided his mental disability, DEFENDANT further
damaged the psychological and mental stability of the PLAINTIFF. "Under the
FEHA, 'reasonable accommodation' means 'a modification or adjustment to the
workplace that enables the employee to perform the essential functions of the job held
or desired.' " (*Cuiellette v. City of Los Angeles* (2011) 194 Cal.App.4th at p. 766.)

110.   DEFENDANT failed to treat PLAINTIFF as if he had a mental disability that
limited his ability to function from day to day, i.e. both his ability to sleep and work.

111.   DEFENDANT knew of PLAINTIFF'S mental disability that limited his daily
functions. Since July 5, 2017, PLAINTIFF utilized FMLA leave in order to mitigate
his symptoms, and each time he did, he would have to report to DEFENDANT'S
attendance line, notifying them when he would not be coming into work.

112.   PLAINTIFF was still able to perform the essential job duties without reasonable
accommodation for his mental disability because DEFENDANT failed to provide
such, insisting week to week that PLAINTIFF work overtime, or he would be
penalized for not doing so. "Reasonable accommodations include '[j]ob restructuring,
part-time or modified work schedules, *reassignment to a vacant position*, . . . and
other similar accommodations for individuals with disabilities.' " (*Swanson v.
Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 968 [181 Cal.Rptr.3d
553], original italics.)

113.   PLAINTIFF was harmed, by further exacerbation of symptoms related to his
mental disability.

/ / /

22

114.   DEFENDANT'S failure to provide reasonable accommodation was a substantial factor in causing PLAINTIFF'S harm.

115.   As a result of DEFENDANT'S failure to accommodate, PLAINTIFF has suffered and continues to suffer, significant economic loss and damages.

## TWELFTH CAUSE OF ACTION
## FRADULENT INDUCEMENT OF EMPLOYMENT CONTRACT
## (Against All DEFENDANTS)

116.   PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

117.   On or about February 20, 2019, approximately "a couple hundred" employees, later identified directly as "approximately 155" (WARN Act Termination Notification ¶.2), were gathered into an auditorium-like area and notified of "mass layoffs" (i.e. termination proceedings) that were to take place over the next few months at "the Facilities" identified within Dexcom, Inc. "[T]he first employee terminations [would] take place on May 3, 2019, or within fourteen (14) days thereafter. At this time, the Company anticipates that additional separations will occur throughout the next few months." (*Id.*)

118.   Each employee was then identified by his or her last name and asked to go down to Human Resources, where they received an individualized packet, complete with a letter describing the circumstances under which they would be effectively terminated.

119.   PLAINTIFF's letter stated in bold font that his "employment with the Company will terminate on 8/2/2019." (*Id.* at ¶.3)

120.   However, DEFENDANT identified the PLAINTIFF as a special employee, worthy of keeping around until a later date, stating "Based on input from your leadership team, you have been deemed eligible for a retention bonus." (Retention Bonus P.1) DEFENDANT made promises within this letter to PLAINTIFF in order to retain him,

DFEH No.: 201810-03885715

1   and award him appropriately, should he remain employed throughout his termination
2   date.

3   121.   Another page within the packet described retention of employees, "certain
4   impacted employees as eligible to receive a Retention Bonus as well as Severance
5   Pay," that they were "considered critical for the ramp down and transition of work,"
6   the retention amount of $25,000, and the eligibility requirements. (*Id.* at 1)

7   122.   Specifically, the eligibility requirements spelled out precisely what an "impacted
8   employee" must do to remain eligible for a bonus and severance. One "must remain
9   employed and in good standing throughout [their] employment, starting today and
10  through [their] designated last day." (*Id.* at ¶.4) This page further identified what good
11  standing was, identifying internal employee standards they would be held accountable
12  for, and an additional requirement that the employee "must work their regular
13  schedule" aside from time they were exempted ". . . a minimum of 80% of the time
14  during the period . . . ." (*Id.* at ¶.6)

15  123.   Effectively, by performance of work by any employee under this agreement,
16  DEFENDANT has formed an employment contract under these terms. Any employee
17  that performs at this level, for this designated period, is entitled to reap the benefits of
18  both a retention bonus and severance pay. "A representation may be made orally, in
19  writing, or by nonverbal conduct." (See *Thrifty-Tel, Inc. v. Bezenek* (1996) 46
20  Cal.App.4th 1559, 1567 [54 Cal.Rptr.2d 468].)

21  124.   An action for promissory fraud may lie where a defendant fraudulently induces the
22  plaintiff to enter into a contract. (*Chelini v. Nieri* (1948) 32 Cal.2d 480, 487 [196 P.2d
23  915] ["tort of deceit" adequately pled where plaintiff alleges "defendant intended to
24  and did induce plaintiff to employ him by making promises ... he did not intend to
25  (since he knew he could not) perform" (fn. omitted)]; *Kuchta v. Allied Builders Corp.*
26  (1971) 21 Cal.App.3d 541, 549 [98 Cal.Rptr. 588], citing *Horn v. Guaranty Chevrolet
27  Motors* (1969) 270 Cal.App.2d 477, 484 [75 Cal.Rptr. 871]; *Squires Dept. Store, Inc.
28  v. Dudum* (1953) 115 Cal.App.2d 320, 323 [252 P.2d 418].) In such cases, the

1    plaintiff's claim does not depend upon whether the defendant's promise is ultimately

2    enforceable as a contract. "If it is enforceable, the [plaintiff] ... has a cause of action in

3    tort as an alternative at least, and perhaps in some instances in addition to his cause of

4    action on the contract." (Rest.2d Torts, § 530, subd. (1), com. c., p. 65, cited with

5    approval in *Tenzer v. Superscope, Inc.* (1985) 39 Cal.3d 18, 29 [216 Cal.Rptr. 130,

6    702 P.2d 212].)

7 125.    DEFENDANT does not intend to perform these promises as they have been made.

8    Employee metrics have drastically changed, individuals are being written up for

9    greater and greater infractions, and the goal posts for each employee keep getting

10    moved further and further away from where they have been consistently performing

11    at, all in an attempt create the appearance of actionable justification for termination.

12    "Promissory fraud" is a subspecies of the action for fraud and deceit. A promise to do

13    something necessarily implies the intention to perform; hence, where a promise is

14    made without such intention, there is an implied misrepresentation of fact that may be

15    actionable fraud. (*Union Flower Market, Ltd. v. Southern California Flower Market,*

16    *Inc.* (1938) 10 Cal.2d 671, 676 [76 P.2d 503]; see Civ. Code, § 1710, subd. (4); 5

17    Witkin, Summary of Cal. Law, supra, § 685, pp. 786-787.)

18 126.    DEFENDANT intends that the PLAINTIFF, as well as any other retained

19    employee, rely on this promise. The promises made within this employment

20    agreement were made with the intent to have any retained employee continue to work

21    through their individual termination period.

22 127.    By continuing to work towards the goal of maintaining employment until his

23    termination date, and by doing so acquiring the retention bonus and severance pay,

24    PLAINTIFF reasonably relied on DEFENDANT'S promise. Every other "retained"

25    employee who was promised these terms under their contract, relies on the same

26    promises the DEFENDANT made.

27 128.    DEFENDANT did not perform the promised act, as PLAINTIFF'S termination

28    date has yet to occur. However, DEFENDANT attempts to trip up every retained

DFEH No.: 201810-03885715

1  employee by continuing to implement ever-changing standards and performance

2  metrics, making it only a matter of time before PLAINTIFF will be unable to survive

3  the workplace until his termination date.

4  129.   PLAINTIFF is harmed by not being able to seek employment elsewhere, and being

5  limited to perform under the terms of this contract until his date of termination. He

6  also struggles with the anxiety and fear of being terminated on a daily basis, under

7  shifting standards of performance, as more and more of the employees he has come to

8  know, respect, and work with are let go.

9  130.   PLAINTIFF'S reliance on DEFENDANT'S promise was a substantial factor in

10  causing his harm. Had DEFENDANT not promised its employees the generous

11  benefits of receiving a retention bonus as well as severance pay for their continued

12  "support and dedication," (Retention Bonus P.1) most, if not all, would have sought

13  employment elsewhere during this period.

14

15  **THIRTEENTH CAUSE OF ACTION**

16  **BREACH OF EMPLOYMENT CONTRACT**

17  **(Against All DEFENDANTS)**

18  131.   PLAINTIFF restates and incorporates by this reference each and every preceding

19  paragraph in this complaint as though fully set forth at this point.

20  132.   By extending the date that PLAINTIFF would continue working for

21  DEFENDANT, under certain conditions, and through a determined termination date,

22  PLAINTIFF and DEFENDANT entered into a contract for employment.

23  133.   PLAINTIFF has and continues to perform at the level required by the contract,

24  going into work every day he is scheduled to do so, thereby completing all of the

25  significant things that the contract requires him to do. Since February 21, 2019, he has

26  yet to miss one day of work.

27  134.   Along with severance pay, PLAINTIFF has been tasked with remaining eligible

28  for a retention bonus in the following manner. The letter he received stated that he

26

1  must remain in good standing through his termination date. (Retention Bonus P.1) He

2  must do so by not receiving any of the following: a performance improvement plan

3  (or extension of an existing one), a written conduct letter, or final written warning for

4  attendance. Additionally, he must work "a minimum of 80% of the time" during the

5  layoff period. That is, between February 21, and August 20, 2019. (*Id.* at 1)

6  135.   Since the inception of this contract, DEFENDANT has repeatedly tried to trip up

7  and interfere with employee performance. They continue to alter evaluation metrics,

8  after repeatedly establishing new and more stringent guidelines; task employees with

9  greater and greater workloads, requiring them to complete them or be written up for

10  poor execution; and seek to find any offense worthy of a workplace occurrence, or

11  outright termination. DEFENDANT regularly attempts to create an impossible

12  situation for every retained employee so that they need not pay out the formed

13  contracts. This interference is certainly beyond the bounds of the contract, and public

14  policy would subsequently dictate a breach of the implied covenant of good faith and

15  fair dealing. "Although breach of the implied covenant often is pleaded as a separate

16  count, a breach of the implied covenant is necessarily a breach of contract." (*Digerati*

17  *Holdings, LLC, supra*, 194 Cal.App.4th at p. 885.)

18  136.   PLAINTIFF is harmed by losing out on the agreed upon retention bonus, severance

19  pay, as well as the ability to acquire gainful employment elsewhere.

20  137.   DEFENDANT'S breach of contract was a substantial factor in causing

21  PLAINTIFF'S harm. By contracting to have PLAINTIFF in DEFENDANT'S employ,

22  and making that performance nearly impossible at every step, DEFENDANT stands as

23  the sole contributing factor to completion of that contract in its entirety.

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

DFEH No.: 201810-03885715

1

2

3

4

## FOURTEENTH CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING
### (Against All DEFENDANTS)

5   138.   PLAINTIFF restates and incorporates by this reference each and every preceding

6       paragraph in this complaint as though fully set forth at this point.

7   139.   PLAINTIFF claims that DEFENDANT violated the duty to act fairly and in good

8       faith by intentionally attempting to trip up, frustrate, and sabotage the efforts of their

9       "critical" employees they personally chose to "retain."

10  140.   " ' "Every contract imposes upon each party a duty of good faith and fair dealing

11      in its performance and its enforcement." ' [] The covenant of good faith finds

12      particular application in situations where one party is invested with a discretionary

13      power affecting the rights of another. Such power must be exercised in good faith."

14      (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2

15      Cal.4th 342, 371–372 [6 Cal.Rptr.2d 467, 826 P.2d 710], internal citations omitted.)

16  141.   On or about February 21, 2019, PLAINTIFF and DEFENDANT entered into an

17      employment contract, extending DEFENDANT'S need for PLAINTIFF within their

18      company.

19  142.   PLAINTIFF has continued to go to work and perform at the level required under

20      the contract, not accumulating or acquiring any of the aforementioned write-ups.

21      Thus, completing substantially all of the significant things that the contract requires

22      him to do.

23  143.   DEFENDANT unfairly interferes with PLAINTIFF'S right to receive the benefits

24      of the contract by altering evaluation metrics, repeatedly moving employee goals,

25      frustrating worker's daily purpose, and creating a nearly impossible environment for

26      PLAINTIFF and his fellow employees to continue to work in.

27  144.   DEFENDANT also maintains the right to unilaterally alter the terms of the

28      employment contract. "When one party to a contract retains the unilateral right to

DFEH No.: 201810-03885715

1  amend the agreement governing the parties' relationship, its exercise of that right is

2  constrained by the covenant of good faith and fair dealing which precludes

3  amendments that operate retroactively to impair accrued rights." (*Cobb v. Ironwood*

4  *Country Club* (2015) 233 Cal.App.4th 960, 963 [183 Cal.Rptr.3d 282].)

5  145.   PLAINTIFF will be harmed if he is not able to work through his termination date,

6  receiving severance pay and the retention bonus brokered under this employment

7  contract. With the almost daily sabotage DEFENDANT continues to exercise on its

8  employees, it will be a miracle if any of them see their termination date through.

9

10  ## FIFTEENTH CAUSE OF ACTION

11  ## INTENTIONAL MISREPRESENTATION OF EMPLOYMENT CONTRACT

12  ## (Against All DEFENDANTS)

13  146.   PLAINTIFF restates and incorporates by this reference each and every preceding

14  paragraph in this complaint as though fully set forth at this point.

15  147.   DEFENDANT represented to PLAINTIFF that a fact was true, that the contract for

16  retention of specifically identified employees would enable each employee to perform

17  under its terms, and be entitled to collect both a retention bonus as well as severance

18  pay, should they work until their termination date.

19  148.   DEFENDANT'S representation was false, seeing as how they seek to trip up

20  employees by altering the methods at which their performance is measured.

21  Attempting to find any and all reasons for justifiable termination so that

22  DEFENDANT will not have to pay out the retention bonuses or severance pay to any

23  employee who stands in violation of DEFENDANT'S shifting standards, prior to an

24  employee's individual termination date.

25  149.   DEFENDANT knew that the representation was false when they made it, or that

26  they made the representation recklessly and without regard for its truth. " '[F]alse

27  representations made recklessly and without regard for their truth in order to induce

28  action by another are the equivalent of misrepresentations knowingly and intentionally

29

1   uttered.' " (*Engalla, supra,* 15 Cal.4th at p. 974, quoting *Yellow Creek Logging Corp.*

2   *v. Dare* (1963) 216 Cal.App.2d 50, 55 [30 Cal.Rptr. 629].)  Having made these

3   statements in order to retain employees, and continuing attempts to ensure not having

4   to pay out these retained employees, DEFENDANT has made it quite clear that their

5   representations were nothing but illusory promises designed to induce employees to

6   stay on, without being compensated accordingly for doing so.

7   150.   DEFENDANT intended that PLAINTIFF rely on the representation. Every eligible

8   employee who stayed on, with the promise of collecting a bonus and severance, relied

9   on the representations of the DEFENDANT, including the PLAINTIFF. These

10   promises are the only things keeping "retained" employees around.

11   151.   PLAINTIFF reasonably relied on DEFENDANT'S representation, and continues

12   to do so, by going to work and performing at the best that he is able to, despite his

13   disability. Hoping that he will be able to obtain the promised retention bonus and

14   severance pay promised by DEFENDANT, yet he struggles with the fear in losing out

15   on this opportunity every day he steps into the office.

16   152.   PLAINTIFF is harmed by not being able to seek alternative employment, and by

17   having to perform under the terms of this employment contract. He also suffers the

18   apprehension of being fired for an unanticipated misstep of changing internal policies

19   and procedures.

20   153.   PLAINTIFF'S reliance on DEFENDANT'S misrepresentation was a substantial

21   factor in causing his harm. Without the promises of a retention bonus or severance pay

22   made by DEFENDANT, the PLAINTIFF, among many other employees would not

23   have been "retained," they would have simply sought employment elsewhere. Many

24   who were promised such a bonus and severance, have already quit, without making it

25   through to their termination dates.

26   / / /

27   / / /

28   / / /

DFEH No.: 201810-03885715

## SIXTEENTH CAUSE OF ACTION

### NEGLIGENT MISREPRESENTATION OF EMPLOYMENT CONTRACT
### (Against All DEFENDANTS)

154. PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

155. In the alternative, PLAINTIFF claims that DEFENDANT negligently misrepresented the terms of the employment contract as true, where DEFENDANT'S representation was entirely a falsehood, designed to induce specifically identified employees into relying on the promises of the employment contract.

156. DEFENDANT made these promises, and may have honestly believed that the representation was true, however, DEFENDANT had no reasonable grounds for believing the representation was true when they made it. They continue to act with the intentions of having employees continue work under these terms, but not having to pay out these contracts to any employee who can satisfy the terms of the contract. One misstep by a "retained" employee, into the shifting sands of the changing performance requirements, will result in termination and the DEFENDANT not having to award the hard work that each "critical" employee continues to accomplish in the face of a nearly impossible situation.

157. " 'To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" and made "with intent to induce [the recipient] to alter his position to his injury or his risk. . . .' " (*B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 834 [64 Cal.Rptr.2d 335], internal citations omitted.)

158. PLAINTIFF reasonably relied on DEFENDANT'S representation, and continues to do so by going to work each day.

159. PLAINTIFF is harmed by not being able to obtain gainful employment elsewhere, while being required to perform under this contract.

1    160.   PLAINTIFF'S reliance on DEFENDANT'S representation is a substantial factor in

2          causing his harm. If not for the representations, promises, and compensation, should

3          the PLAINTIFF see his termination date, he, nor any other employee would have

4          stayed on in the employ of DEFENDANT.

5

6                       **SEVENTEENTH CAUSE OF ACTION**

7              **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

8                          **(Against All DEFENDANTS)**

9    161.   PLAINTIFF restates and incorporates by this reference each and every preceding

10         paragraph in this complaint as though fully set forth at this point.

11   162.   DEFENDANT'S conduct caused PLAINTIFF to suffer severe emotional distress.

12         "Severe emotional distress [is] emotional distress of such substantial quantity or

13         enduring quality that no reasonable man in a civilized society should be expected to

14         endure it." (*Fletcher v. Western Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397

15         [89 Cal.Rptr. 78].) Since DEFENDANT was aware of PLAINTIFF'S mental

16         disability, and yet continuously mandated he work hours and shifts that further

17         exacerbated PLAINTIFF'S condition, the two can be intrinsically and explicably

18         linked.

19   163.   DEFENDANT'S conduct was outrageous. " 'Behavior may be considered

20         outrageous if a defendant (1) abuses a relationship or position that gives him power to

21         damage the plaintiff's interests; (2) knows the plaintiff is susceptible to injuries

22         through mental distress; or (3) acts intentionally or unreasonably with the recognition

23         that the acts are likely to result in illness through mental distress. . . .' " (*Molko v.*

24         *Holy Spirit Ass'n* (1988) 46 Cal.3d 1092, 1122 [252 Cal.Rptr. 122, 762 P.2d 46],

25         internal citation omitted.) [Those] that have been recognized as significantly

26         contributing to the conclusion that particular conduct was outrageous include [the]

27         employer-employee [relationship.] (*Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d

28         493, 498, fn.2 [86 Cal.Rptr. 88, 468 P.2d 216]).

                                         32

164.   DEFENDANT acted with reckless disregard of the probability that PLAINTIFF would suffer emotional distress, knowing of PLAINTIFF'S mental disability and yet continued to act as they did. "Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory." (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 905 [2 Cal.Rptr.2d 79, 820 P.2d 181].) ]

165.   PLAINTIFF suffered severe emotional distress, including severe insomnia, exacerbated anxiety and apprehensiveness, and undue and unreasonable stress. "Emotional distress" includes any "highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, or worry." (*Fletcher v. Western National Life Insurance Co.* (1970) 10 Cal.App.3d 376, 397 [89 Cal.Rptr. 78].)

166.   DEFENDANT'S conduct was a substantial factor in  causing PLAINTIFF'S severe emotional distress. " 'One who has wrongfully and intentionally [suffered severe emotional distress] may recover compensatory damages even though he or she has suffered no physical injury,' and 'the right to compensation exists even though no monetary loss has been sustained.' " (*Grimes v. Carter* (1966) 241 Cal.App.2d 694, 699 [50 Cal.Rptr. 808].)

167.   As a result of DEFENDANT'S intentional conduct, PLAINTIFF has suffered and continues to suffer, significant damages.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

33

## EIGHTEENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against All DEFENDANTS)

168.   PLAINTIFF incorporates, by reference, all of the foregoing paragraphs of this Complaint, as though fully set forth herein.

169.   In the alternative, DEFENDANT'S negligent conduct caused PLAINTIFF to suffer serious emotional distress, including severe insomnia, exacerbated anxiety and apprehensiveness, and undue and unreasonable stress.

170.   DEFENDANT was negligent, by not giving any regard, accommodation, or interaction with PLAINTIFF regarding his disability or how to mitigate his symptoms.

171.   PLAINTIFF suffered serious emotional distress, including the exacerbation of his disability, furthering his anxiety and insomnia, as well as the daily fear of losing his job, and the compensation tied to his employment contract.

172.   DEFENDANT'S negligence was a substantial factor in causing PLAINTIFF'S serious emotional distress.

173.   As a result of DEFENDANT'S negligence, PLAINTIFF has suffered and continues to suffer, significant damages.

## NINETEENTH CAUSE OF ACTION
### FAILURE TO PROVIDE MEAL BREAKS
### (Against All DEFENDANTS)

174.   PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

175.   PLAINTIFF was not provided meal periods as required by California Labor Code § 226.7, 512 and Industrial Welfare Commission Wage Orders.

176.   Throughout the statutory period alleged herein, PLAINTIFF regularly worked for more than five (5) hours during a work period without being allowed to take the mandatory thirty (30) minute meal break for each five (5) hours of work as required

34

1    by California law, and without being compensated for missing meal periods. *See*

2    *Brinker Restaurant Corp., et al. v. Superior Court* (2012) 52 Cal. 4th 1004, 1040-41

3    ("The employer satisfies this obligation if it relieves its employees of all duty,

4    relinquishes control over their activities and permits them a reasonable opportunity to

5    taken an uninterrupted 30-minute break, and does not impede or discourage them from

6    doing so... [A] first meal period [is required] no later than the end of an employee's

7    fifth hour of work, and a second meal period [is required] no later than the end of an

8    employee's 10th hour of work.").

9   177.  DEFENDANT failed to provide PLAINTIFF meal periods as required by

10   California law. Throughout the time PLAINTIFF was employed with DEFENDANT,

11   DEFENDANT discouraged, dissuaded, impeded and failed to provide PLAINTIFF

12   with uninterrupted meal periods of not less than thirty (30) minutes as required by the

13   Labor Code and failed to provide one (I) hour of premium pay for each day they failed

14   to provide a meal period.

15   178.  The working conditions and work schedules at DEFENDANT'S employment

16   location deprived PLAINTIFF a meaningful opportunity to take the meal breaks

17   required by California law. PLAINTIFF was consistently interrupted during his meal

18   and rest period(s) to fulfill his work duties and attend to DEFENDANT'S requests.

19   179.  DEFENDANT required PLAINTIFF, as a condition of maintaining his

20   employment with DEFENDANT, to regularly work through his meal periods, and was

21   given little to no appropriate time to take such breaks.

22   180.  Additionally, and as a result of the DEFENDANT'S above-referenced wrongful

23   conduct, PLAINTIFF has suffered, and is continuing to suffer, significant economic

24   loss and damages.

25   / / /

26   / / /

27   / / /

28   / / /

DFEH No.: 201810-03885715

## TWENTIETH CAUSE OF ACTION
### FAILURE TO PROVIDE REST BREAKS
### (Against All DEFENDANTS)

181.   PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

182.   PLAINTIFF was not authorized or permitted to take a full, uninterrupted ten-minute rest period for every four (4) hours worked. PLAINTIFF remained on duty or was called back into duty to work before the end of his (10) minute rest breaks. *See Brinker,* 53 Cal. 4th 1004 at 1029 ("Employees are entitled to 10 minutes rest for shift from three and one-half to six hours up to 10 hours, 30 minutes for shifts of more than I0 hours up to 14 hours, and so on."). Essentially, PLAINTIFF was always on duty, subject to his employer's control, even when he was on his purported "breaks," which in any event were often less than ten (10) minutes or not permitted at all.

183.   PLAINTIFF was not paid the required premium pay for days in which he worked at least three (3) and one-half hours and was not authorized or permitted to take a full, uninterrupted ten (10) minute rest break for every four (4) hours of work or major fraction thereof.

184.   As a result of the DEFENDANT'S above-referenced wrongful conduct, PLAINTIFF has suffered, and continues to suffer, significant economic loss and damages.

## TWENTY FIRST CAUSE OF ACTION
### FAILURE TO PAY WAGES
### (Against All DEFENDANTS)

185.   PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

186.   Labor Code §204 establishes the fundamental right of all employees in the State of California to be paid wages in a timely fashion for their work.

DFEH No.: 201810-03885715

187.   "[A]n employer is not entitled to a setoff of debts owing it by an employee against any wages due that employee." (Barnhill v. Robert Saunders & Co. (1981) 125 Cal.App.3d 1, 6.)

188.   Throughout PLAINTIFF'S employment, DEFENDANT has systemically and extensively delayed payment to PLAINTIFF for hours worked. These periods of time would vary from a few days to weeks at a time.

189.   DEFENDANT is required to pay PLAINTIFF for all hours worked, meaning the time during which an employee is subject to the control of an employer. Accordingly, PLAINTIFF was under the direct control of DEFENDANT throughout his work day.

190.   DEFENDANT'S practice of failing to pay PLAINTIFF for his labor is unlawful and creates an entitlement, pursuant to Labor Code §218, to recovery of the unpaid balance of the full amount of the straight time compensation owing.

191.   PLAINTIFF was damaged by not receiving compensation which PLAINTIFF should have received for the amount of hours he produced. PLAINTIFF is entitled to receive his compensation, together with pre-judgment interest, attorney's fees and costs of suit.

192.   In addition, as a result of DEFENDANT'S failure to pay all compensation due to PLAINTIFF upon his termination of employment, PLAINTIFF is entitled to receive an additional thirty (30) days of wages from the date said wages were due, pursuant to Labor Code §203.

## TWENTY SECOND CAUSE OF ACTION
## FAILURE TO PAY OVERTIME
### (Against All DEFENANTS)

193.   PLAINTIFF restates and incorporates by this reference each and every preceding paragraph in this complaint as though fully set forth at this point.

194.   Throughout the statutory period alleged herein, PLAINTIFF regularly worked in excess of eight (8) hours per day and in excess of forty (40) hours per week. However,

DFEH No.: 201810-03885715

1    DEFENDANT never paid PLAINTIFF the appropriate overtime compensation for any

2    hours worked in excess of eight (8) hours per day. In addition, DEFENDANT never

3    paid PLAINTIFF the appropriate overtime compensation for any hours worked in

4    excess of forty (40) hours per week.

5    195.   PLAINTIFF regularly worked in excess of eight (8) hours per day and/or forty (40)

6    hours per week without overtime compensation.

7    196.   Labor Code Section 510 and Industrial Welfare Commission Wage Order 5-2001

8    require that all workers be compensated for all hours worked, including overtime

9    premium pay for overtime hours worked (Labor Code Section 51 O; 8 Cal. Code of

10   Regulations. Section 11040, subdivision 3(A).) Workers must be paid regular wages

11   for hours worked and overtime premium pay in the amount of one (I) and one-half

12   times each employee's regular rate of pay for any work in excess of eight (8) hours in

13   one working day *(Id.)*.

14   197.   Workers must also be paid double-time premium pay in the amount of double each

15   employee's regular rate of pay, for any work in excess of 12 hours in one day and any

16   work in excess of eight (8) hours on any seventh day of a workweek *(Id.)*.

17   198.   DEFENDANT has failed to provide PLAINTIFF with the correct and accurate

18   compensation that is owed. PLAINTIFF was required to work throughout various and

19   extensive hours of work, however, was not accorded appropriate overtime

20   compensation by DEFENDANT. By failing to pay overtime compensation to

21   PLAINTIFF, DEFENDANT has violated and continues to violate Labor Code§§ 204,

22   510, 1194 and Wage Order 5-2001, 15-2001.

23   199.   As a result of the DEFENDANT'S above-referenced wrongful conduct,

24   PLAINTIFF has been deprived of overtime compensation in an amount to be

25   determined at trial, and is entitled to recovery of such amounts, plus interest thereon,

26   attorneys' fees and costs, under Labor Code § 1194.

27   / / /

28   / / /

DFEH No.: 201810-03885715

# TWENTY THIRD CAUSE OF ACTION

## VIOLATIONS OF BUSINESS & PROFESSIONS CODE §17200-17208

### (Against All DEFENDANTS)

200.   PLAINTIFF incorporates, by reference, all of the foregoing paragraphs of this Complaint, as though fully set forth herein.

201.   *California Business & Professions Code* §§ 17200-et seq. prohibits acts of unfair competition, which includes any "unlawful and unfair business practices." It is the policy of this State to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect those employers who comply with the law from losing competitive advantage to other employers who fail to comply with labor standards and requirements.

202.   Throughout PLAINTIFF'S employment with DEFENDANT, DEFENDANT has committed unlawful, unfair, and/or fraudulent business acts and practices as defined and in violation of Business & Professions Code §§17200 by discriminating against and failing to provide reasonable accommodations for individuals with disabilities, retaliating against individuals for lawful conduct, creating a hostile work environment, failing to prevent harassment, discrimination, and discrimination, causing individuals emotional distress, all in violation of California law.

203.   The above-described unlawful actions by DEFENDANT constitute false, unfair, fraudulent and/or deceptive business practices, within the meaning of Business and Professions Code § 17200, *et seq.* By engaging in these business practices, which are unfair business practices within the meaning of Business & Professions Code §§ 17200 et. seq., DEFENDANT has reaped unfair benefits and illegal profits at the expense of PLAINTIFF. DEFENDANT must disgorge these ill-gotten gains and restore to PLAINTIFF the wrongfully withheld wages pursuant to section 17203 of the California Business and Professions Code.

/ / /

/ / /

39

1

## REQUEST FOR JURY

2  204.   Under California Code of Civil Procedure §631(a), the PLAINTIFF, David

3  Shewbert, respectfully requests a trial by jury on all issues so triable.

4

5

## PRAYER FOR RELIEF

6  WHEREFORE, PLAINTIFF prays for this Court to grant the following relief against

7  DEFENDANT:

8  1.  For damages according to proof, including: loss of past, current and future earnings,

9  deferred compensation, meal and rest period premiums, and other employment

10  benefits;

11  2.  For interest on the amount of losses incurred, including: loss of past, current, and

12  future earnings, deferred compensation, meal and rest period premiums, and other

13  employee benefits;

14  3.  For Prejudgment interest on lost wages, unpaid overtime, deferred compensation,

15  meal and rest period premiums, and other employment benefits.

16  4.  For general damages according to proof with interest thereon;

17  5.  For compensatory damages according to proof with interest thereon;

18  6.  For expectation damages according to proof with interest thereon;

19  7.  For reliance damages according to proof with interest thereon;

20  8.  For special damages according to proof with interest thereon;

21  9.  For punitive damages according to proof with interest thereon. "The FEHA does not

22  itself authorize punitive damages. It is, however, settled that California's punitive

23  damages statute, Civil Code section 3294, applies to actions brought under [it]."

24  (*Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1147–1148 [74

25  Cal.Rptr.2d 510].);

26  10.For penalty pursuant to Labor Code §203 for Plaintiffs daily wage times thirty days.

27  11.That DEFENDANT be found to have engaged in unfair competition in violation of

28  sections 17200, et. seq. of the California Business and Professions Code;

40

DFEH No.: 201810-03885715

1    12. That DEFENDANT be ordered and enjoined to make restitution to PLAINTIFF due
2         to DEFENDANT'S unfair competition, including disgorgement of its wrongfully-
3         withheld wages, penalties and/or penalty wages, pursuant to California Business and
4         Professions Code sections 17202, 17203, and 17204;

5    13. That DEFENDANT be enjoined from continuing the illegal course of conduct, alleged
6         herein; "We have held 'that, in a civil action under the FEHA, all relief generally
7         available in noncontractual actions . . . may be obtained.' This includes injunctive
8         relief." (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [87
9         Cal.Rptr.2d 132, 980 P.2d 846].)

10   14. That DEFENDANT be ordered and enjoined to conduct training for all employees,
11        supervisors, and management on the requirements of the law, the rights and remedies
12        of those who allege a violation of this part, and the employer's internal grievance
13        procedures, as well as the applicable penalty of up to $25,000 pursuant to Cal. Gov.
14        Code § 12965(c) for each unlawful business practice alleged;

15   15. That DEFENDANT further be enjoined to cease and desist from unfair competition in
16        violation of sections 17200, et seq. of the California Business and Professions Code;

17   16. That DEFENDANT be ordered and enjoined to clean up the workplace where
18        PLAINTIFF is currently employed, including but not limited to, repair, replacement,
19        and continuing monitoring of heating, air-conditioning, filtration, and ventilation
20        systems therein;

21   17. For attorneys' fees pursuant to Cal. Gov. Code §12965(b), Labor Code §§1194, 218.5,
22        226, (and under all other applicable statutes) interests and costs of suit; and

23   18. For such other and further relief as the Court deems just and proper.

24
25
26
27
28

DFEH No.: 201810-03885715

12. That DEFENDANT be ordered and enjoined to make restitution to PLAINTIFF due to DEFENDANT'S unfair competition, including disgorgement of its wrongfully-withheld wages, penalties and/or penalty wages, pursuant to California Business and Professions Code sections 17202, 17203, and 17204;

13. That DEFENDANT be enjoined from continuing the illegal course of conduct, alleged herein; "We have held 'that, in a civil action under the FEHA, all relief generally available in noncontractual actions . . . may be obtained.' This includes injunctive relief." (*Aguilar v. Avis Rent A Car System, Inc.* (1999) 21 Cal.4th 121, 132 [87 Cal.Rptr.2d 132, 980 P.2d 846].)

14. That DEFENDANT be ordered and enjoined to conduct training for all employees, supervisors, and management on the requirements of the law, the rights and remedies of those who allege a violation of this part, and the employer's internal grievance procedures, as well as the applicable penalty of up to $25,000 pursuant to Cal. Gov. Code § 12965(c) for each unlawful business practice alleged;

15. That DEFENDANT further be enjoined to cease and desist from unfair competition in violation of sections 17200, et seq. of the California Business and Professions Code;

16. That DEFENDANT be ordered and enjoined to clean up the workplace where PLAINTIFF is currently employed, including but not limited to, repair, replacement, and continuing monitoring of heating, air-conditioning, filtration, and ventilation systems therein;

17. For attorneys' fees pursuant to Cal. Gov. Code §12965(b), Labor Code §§1194, 218.5, 226, (and under all other applicable statutes) interests and costs of suit; and

18. For such other and further relief as the Court deems just and proper.

/ / /
/ / /
/ / /
/ / /
/ / /

41

DFEH No.: 201810-03885715

1

## <u>VERIFICATION</u>

2   I, **Joseph D. Mitchell, Esq.** am the attorney for the PLAINTIFF, **David Shewbert**, in the

3   above-entitled complaint. My client has read the foregoing complaint and knows the

4   contents thereof. The same is true of my own knowledge, except as to those matters

5   which are therein alleged on information and belief, and as to those matters, my client

6   believes them to be true.

7

8   My client and I declare under penalty of perjury under the laws of the State of California

9   that the foregoing is true and correct.

10   Date: July 3, 2019

11

12   _____

13   Joseph D. Mitchell, Esq., *Attorney*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

42